## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CHELSEA WEAVER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 11-1376-JWL** |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

### MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Supplemental Security income (SSI) and child's insurance Social Security benefits based on disability under sections 202, 223(d), and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 402, 423(d), and 1382c(a)(3)(A) (hereinafter the Act). Finding no error in the final decision of the Commissioner, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

**I.    Background**

Plaintiff applied for both SSI and child's insurance benefits in January, 2009, alleging disability beginning at her birth on December 27, 1989. (R. 13, 94-102). The applications were denied initially and upon reconsideration, and Plaintiff requested a

hearing before an Administrative Law Judge (ALJ).  (R. 13, 43-46, 66-67).  Plaintiff's request was granted, and at 20 years of age Plaintiff appeared with counsel and testified at a hearing before ALJ William H. Rima on February 11, 2010.  (R. 13, 29-42).  At the hearing, Plaintiff through counsel argued that her condition meets Listing 12.05C because she has mild mental retardation with deficits in adaptive function first manifested before age 22, a valid full scale IQ score of 63, and another severe mental impairment--attention deficit hyperactivity disorder (ADHD).  (R. 32).

On May 7, 2010 ALJ Rima issued a decision finding that ADHD is not a severe impairment in this case (R. 17) and that, therefore, Plaintiff's condition does not meet or equal the severity of Listing 12.05 because Plaintiff does not have "a physical or other mental impairment imposing an additional and significant work-related limitation of function."  (R. 19).  The ALJ determined that Plaintiff's testimony "is largely credible, but does not document disabling limitations," and that her grandmother's "statement is generally credible, but does not document limitations preclusive of work."  (R. 21).  The ALJ gave "substantial weight" to the medical opinions of nontreating source psychologist, Dr. Allen, nonexamining source psychologists, Dr. Adams and Dr. Jessop, and nonexamining source physician, Dr. Siemsen.  (R. 21-22).  The ALJ assessed Plaintiff with the residual functional capacity (RFC) for "a full range of work at all exertional levels but with the following nonexertional limitations:  she can understand and remember simple instructions and can sustain concentration and attention for simple work throughout an 8-hour workday.  She is able to get along with coworkers, supervisors, and

others on a regular basis and can adapt to typical work procedures and environment." (R. 20). The ALJ recognized that Plaintiff has no past relevant work, but determined that based on the RFC assessed and considering Plaintiff's age, education, and work experience, there are a significant number of jobs in the national economy that Plaintiff is able to perform. (R. 22-23). Therefore, he determined that Plaintiff is not disabled within the meaning of the Act, and denied her applications. (R. 23).

Plaintiff sought Appeals Council review of the ALJ's decision and submitted a Representative Brief detailing her reasons. (R. 7, 179-82). The Appeals Council made the Representative Brief a part of the administrative record and considered that brief in deciding whether to review the decision. (R. 1, 5). But, the Council found the brief provided no basis for changing the ALJ's decision, found no reason under Social Security Administration rules to review the decision, and denied Plaintiff's request. (R. 1-6). Therefore, the ALJ's decision is the final decision of the Commissioner. (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review of that decision. (Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act. Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)). Section 405(g) of the Act provides for review of a final decision of the

Commissioner made after a hearing in which the Plaintiff was a party. It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

   An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months. Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and

4

1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability.  20 C.F.R. §§ 404.1520, 416.920 (2010); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining whether claimant can perform past relevant work; and whether, considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).

In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Blea, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show there are jobs in the economy within Plaintiff's RFC. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

      Plaintiff claims three errors in the ALJ's decision. She claims that the ALJ failed to consider Listing 12.05C properly because he erroneously determined Plaintiff's ADHD was not a severe impairment, that the ALJ erred in weighing the medical opinions because he did not properly consider the opinions of Dr. Freeman and Dr. de Wit and accorded great weight to the opinion of Dr. Allen, and that the ALJ erred in purportedly finding the testimony of Plaintiff and her grandmother credible, but failing to include limitations accounting for Plaintiff's slow pace and difficulty with written instructions. The Commissioner responds that Plaintiff did not meet her burden to prove that ADHD is an impairment imposing an additional and significant work-related limitation of function in this case; that the ALJ properly evaluated the credibility of Plaintiff's allegations and found them to be "largely," but "not entirely" credible; and that the ALJ properly weighed the medical opinion of Dr. Freeman which is substantially consistent with that of Dr. Allen. After considering the parties' arguments and the record evidence in this case, the court finds no error in the Commissioner's decision. The court addresses each issue in the order raised in Plaintiff's Brief.

**III.     Listing 12.05C**

Plaintiff argues that her condition meets all of the criteria of Listing 12.05C, and that the ALJ erred in finding otherwise because he erroneously concluded that ADHD is not a "severe" impairment in the circumstances of this case. (Pl. Br. 13). Plaintiff points to Dr. Freeman's testing and evaluation in 2003 (Pl. Br. 14-15), to Dr. de Wit's February 2008 evaluation, to the inadequacy of Plaintiff's self-report of "symptoms indicat[ing] less of an impairment," id. at 15-16, and to Dr. Allen's consultative examination on March 11, 2009, and argues that the ALJ erroneously "concluded that the evidence does not document any problems with concentration, attention, or memory when Weaver is not taking prescribed medication," and erroneously concluded that Plaintiff's ADHD does not meet the de minimis standard for a "severe" impairment at step two. Id. at 16. The Commissioner argues that Plaintiff has not met her burden to show an additional "severe" impairment because all of her mental limitations result from her intellectual functioning, and Dr. Allen questioned whether Plaintiff has ADHD, and "concluded that if she did, her medication managed the symptoms well." (Comm'r Br. 5-6).

As Plaintiff argues, in order to meet or equal Listing 12.05C, a claimant must show three criteria are met: (1) evidence of onset of mental retardation before age twenty-two, (2) a valid IQ score of 60 through 70, and (3) a severe physical or mental impairment in addition to mental retardation. Wall, 561 F.3d at 1062; 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.05C. The third criterion is the one concerning which Plaintiff urges error. The question of whether a claimant has an impairment which is "severe" within the meaning

of the Act is one which an ALJ must address at step two of the sequential evaluation process.  Williams, 844 F.2d at 750-51.

An impairment is not considered severe if it does not significantly limit plaintiff's ability to do basic work activities such as walking, standing, sitting, carrying, understanding simple instructions, responding appropriately to usual work situations, and dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521, 416.921.  The Tenth Circuit has interpreted the regulations and determined that to establish a "severe" impairment or combination of impairments at step two of the sequential evaluation process, plaintiff must make only a "de minimis" showing.  Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).  Plaintiff need only show that an impairment would have more than a minimal effect on her ability to do basic work activities.  Williams, 844 F.2d at 751.  However, she must show more than the mere presence of a condition or ailment.  Hinkle, 132 F.3d at 1352 (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)).  If an impairment's medical severity is so slight that it could not interfere with or have a serious impact on plaintiff's ability to do basic work activities, it could not prevent plaintiff from engaging in substantial work activity and will not be considered severe.  Hinkle, 132 F.3d at 1352.

In his step two analysis, the ALJ summarized and discussed the record evidence regarding ADHD.  (R. 15-17).  He began with Dr. Freeman's 2003 Psychological Evaluation of Plaintiff, which was performed "to address concerns related to ADHD-like

behaviors" when Plaintiff was 13 years old. (R. 267).[1] He noted that "information provided by the claimant's grandmother and teachers suggested ADHD-like behavior, but the overall conclusion was that these behaviors were the product of intellectual limitations and anxiety." (R. 15). He noted that the final diagnoses in Dr. Freeman's report were anxiety disorder and mild mental retardation, not ADHD. Id.

He next summarized a Psychological Evaluation Report completed by Dr. de Wit in 2008 when Plaintiff was a senior in high school. (R. 16). He noted Plaintiff's report to Dr. de Wit that she had a previous diagnosis of ADHD for which she was taking Strattera. Id. He noted that Dr. de Wit diagnosed mild mental retardation and ADHD and reported that on a self-report scale Plaintiff did not indicate any telltale symptoms of ADHD, which suggested "either that she did not have that disorder or that medication was doing a remarkable job." (R. 16); see also (R. 251) ("On the adult ADHD self report scale, Chelsea did not check any telltale symptoms of ADHD, which suggests that either she does not have that disorder, or that the medication is doing a remarkable job.").

Lastly, the ALJ also considered and discussed the report of a Mental Status Exam completed for the Social Security Administration by Dr. Allen. (R. 16-17). He stated, "The claimant reported that she utilized medication for ADHD until her senior year in

---

[1]In his discussion, the ALJ did not address Dr. Freeman by name, and the decision contains a typographical error stating the assessment was "in 2002," but the facts addressed are those related to Dr. Freeman's 2003 report, and the ALJ specifically cited to Dr. Freeman's report as "(exhibit 11F)." (R. 15-16) (Ex. 11F appears in the record at 267-73).

9

high school, at which time she stopped it voluntarily without adverse effect. Dr. Allen noted from a review of the record that the symptoms were mixed and that the claimant never truly came across as having ADHD. The claimant reported better focus when not taking the medication." (R. 16-17). The ALJ also noted that Plaintiff had stopped taking Strattera in 2008, and in 2009 requested to restart the medication, but that "the claimant's statements indicate that she did not resume longterm use of any medication. (R. 17) (citing Ex. 9E/3 (R. 155) (reporting no medications used); Ex. 14E/4 (R. 170) (same); Ex. 15E (R. 177) (same)).

After discussing and considering the evidence, the ALJ stated his findings regarding Plaintiff's ADHD. "The evidence is unclear as to whether the claimant has ADHD, but the evidence clearly documents the lack of any problems with concentration, attention, or memory when the claimant is not taking prescribed medication, except for limitations correlating to her intellectual limitations. ADHD is not a severe impairment." (R. 17) (emphasis added). In context, this constitutes the ALJ's finding that ADHD is not a severe impairment in the circumstances of this case.

The mere presence of an impairment is insufficient to establish that the impairment is "severe" within the meaning of the Act. Hinkle, 132 F.3d at 1352. The determinative question is whether the impairment has more than a minimal effect on Plaintiff's ability to do basic work activities. Williams, 844 F.2d at 751. The regulations provide examples of basic mental work activities necessary to do most jobs, such as "understanding, carrying out, and remembering simple instructions," "use of judgment," "responding appropriately

to supervision, co-workers, and usual work situations," and "dealing with changes in a routine work setting."  20 C.F.R. §§ 404.1521(b)(3-6), 416.921(b)(3-6).

Plaintiff asserts that ADHD has more than a minimal effect on her ability to do basic work activities, but she does not point to record evidence demonstrating such effects from ADHD in her case.  She asserts that the ALJ stated that the evidence does not show problems with concentration, attention, or memory when she is not taking her medication, and argues that the ALJ overlooked the 2003 testing which showed "significant deficits in inattentiveness," and that she requested increased dosages of medication "for maximum effectiveness."  (Pl. Br. 16).

The ALJ's finding is more nuanced than Plaintiff suggests.  Rather, as quoted above he stated, "the evidence clearly documents the lack of any problems with concentration, attention, or memory when the claimant is not taking prescribed medication, except for limitations correlating to her intellectual limitations." (R. 17) (emphases added).  Although Plaintiff apparently believes her inattentiveness relates to ADHD rather than to mild mental retardation, the record evidence does not support that belief.  In his report in 2003, Dr. Freeman explained,

> Although the information provided by Chelsea's grandmother and teachers suggests that she demonstrates ADHD-like behaviors, the overall results suggest that the behaviors or difficulties appear to be the product of limited intellectual abilities and an elevated state of anxiety.  Because the demands of the environment often exceed the resources of an individual with limited cognitive abilities, it is not unusual for that person to struggle with maintaining attention and concentration.  It is also not uncommon for such individuals to be hyperactive.  Additionally, it is not uncommon for

individuals who are experiencing an elevated state of anxiety to struggle with maintaining attention and concentration, and to be restless or fidgety.

(R. 270). Dr. Freeman did not diagnose ADHD. He attributed Plaintiff's decreased attention and concentration to mild mental retardation and to her elevated state of anxiety.[2]

Moreover, the other record evidence supports the ALJ's finding. As the ALJ specifically noted, Dr. de Wit stated that the evidence "suggests that either [Plaintiff] does not have [ADHD], or that the medication is doing a remarkable job." (R. 251). And, Dr. Allen provided this discussion of Plaintiff's ADHD:

> When asked about the reports that she was treated for ADHD, Chelsea indicates that she was on about two years worth of medication, stopping the medication in her senior year. She indicates she is really not sure if the medication was helpful to her not, and it appears that she simply got tired of being on the prescription. Records indicate that her symptom presentation was rather mixed, and that <u>she did not truly come off as having ADHD</u>. Chelsea reports that she felt that she was able to focus better when she was not taking the medication.

(R. 185) (emphasis added). Dr. Allen noted, "Chelsea may have some slight weakness with concentration, but this can be chalked up to her overall low IQ." (R. 187).

Plaintiff has not demonstrated that ADHD causes more than a minimal effect on her ability to do basic work activities. The ALJ found that ADHD is not a severe

---

[2]While it might be argued that "anxiety disorder" is an additional "severe" impairment in this case, Plaintiff does not make that argument--and she could not. There is no evidence of an anxiety disorder in the record after this single incident in 2003, when Plaintiff was a 13-year-old girl undergoing seven days of psychological testing related to her school performance. That testing occurred more than six years before the hearing in this case, and no evaluation concurrent with the hearing suggested anxiety disorder.

impairment in the circumstances of this case, and as discussed above substantial record evidence supports that finding. Because Plaintiff has not shown a "severe" impairment in addition to mild mental retardation, she cannot show that she meets Listing 12.05C.

## IV.    Medical Opinions

Plaintiff claims the ALJ erred when he failed to explain why he did not adopt Dr. Freeman's opinion that Plaintiff needs step-by-step instructions limited to one to two steps and needs criticism to be constructive and as positive as possible. She also claims error in the ALJ's failure to explain why he did not adopt Dr. de Wit's opinion that plaintiff could follow directions of at least three steps, could learn best by writing down instructions, and has difficulty responding to instructions. Plaintiff implies that Dr. Freeman's limitation to one to two-step instructions, if accepted, would preclude all work. (Pl. Br. 19-20) (citing Coleman v. Astrue, No. 09-1338-SAC, 2010 WL 4942103, 3 (D. Kan. Nov. 30, 2010)). The Commissioner argues that the decision reveals that the ALJ considered all of the medical opinions, and that although the ALJ did not specify the weight given to Dr. Freeman's opinion, that opinion is "substantially consistent with that of Dr. Allen." (Comm'r Br. 10).

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be

evaluated by the Commissioner in accordance with factors contained in the regulations. Id. §§ 404.1527(d), 416.927(d); Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2012).

The record must demonstrate that the ALJ considered all of the evidence, but the ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects. Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996). SSR 96-8p, however, includes specific narrative discussion requirements for an RFC assessment. West's Soc. Sec. Reporting Serv., Rulings 149 (Supp. 2012). That discussion is to cite specific medical facts to describe how the evidence supports each conclusion. Id. It must include an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved. Id. And, if the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why she did not adopt the opinion. Id. at 150.

As the Commissioner argues, the decision makes clear that the ALJ considered and discussed both Dr. Freeman's and Dr. de Wit's medical opinions. As discussed at footnote 2 herein, it is clear from the decision that although the ALJ did not name Dr. Freeman, he considered and discussed Dr. Freeman's 2003 Psychological Evaluation of Plaintiff. (R. 15-16) (citing Ex. 11F (R. 267-73)). The ALJ also considered and discussed the Psychological Evaluation Report completed by Dr. de Wit in 2008 when Plaintiff was a senior in high school. (R. 16) (citing Ex. 10F (R. 246-66)). The court

agrees with the Commissioner that these opinions were substantially consistent with Dr. Allen's and Dr. Adam's opinions to which the ALJ accorded "substantial weight."

The ALJ noted Dr. Allen's opinion that Plaintiff is able to understand and carry out simple instructions, able to get along with coworkers and take directions from supervisors. (R. 21). He noted her opinion that although Plaintiff might have a sense of entitlement, she would be able to adapt to the demands of a workplace including attendance and productivity. Id. He also noted that Dr. Adams found <u>moderate limitations</u> in the ability to understand, remember, and carry out <u>detailed</u> instructions. Id. Implicit in discussing those two moderate limitations, but unsaid by the ALJ, was Dr. Adam's finding that Plaintiff is "Not Significantly Limited" in the eighteen other mental abilities identified in the Commissioner's Mental Residual Functional Capacity Assessment form--including the abilities to understand, remember, and carry out simple instructions, to get along with coworkers, to accept instructions, and to adapt to changes in the workplace. (R. 196-97). Dr. de Wit opined that although Plaintiff was not working "at present," work was a possibility; that she is "able to follow directions of <u>at least</u> three steps;" that she learns best by writing down; that she deals well with changes; and that the long-term prognosis is positive. (R. 252) (emphasis added). Dr. Freeman opined that although IQ results indicate Plaintiff is mildly mentally retarded, "she appears to possess a number of strengths that suggest higher functioning;" that instructions should be provided to her "in a step-by-step format, <u>generally</u> limited to one or two steps;" and that

criticism of Plaintiff "should be provided in a manner that is as positive and constructive as possible." (R. 271) (emphasis added).

Although these opinions are not identical in every respect, the court finds that in context they are substantially consistent. Certainly Dr. Freeman's and Dr. de Wit's opinions are not uncontroverted evidence the ALJ chose not to rely upon, or significantly probative evidence he rejected--thus requiring a more specific discussion pursuant to Clifton, 79 F.3d at 1009-1010, or requiring an explanation how the ambiguities and material inconsistencies were resolved or why the opinions were not adopted pursuant to SSR 96-8p.

Plaintiff's argument relies primarily on the fact that Dr. Freeman opined that instructions should be provided "in a step-by-step format, generally limited to one or two steps." As the underlined portion of Dr. Freeman's opinion indicates, Dr. Freeman did not require that instructions always be limited to one to two steps. Moreover, and more importantly, Dr. Freeman's opinion was formed more than six years before the hearing in this case. And, it was made in an elementary school context for a thirteen-year-old mildly mentally retarded child who was having difficulty with concentration, attentiveness, and other ADHD-like behaviors. Dr. Freeman's report did not indicate that the limitations on instructions were rigid or were intended to be applied ad infinitum. Further, five years later Dr. de Wit provided the school system with an opinion indicating that Plaintiff could follow direction of at least three steps.

Finally, Plaintiff does not establish that a limitation to one to two-step instructions would preclude work. Plaintiff points to the Coleman case, and asserts that although the ALJ here "never called a vocational expert, [ ] at least one vocational expert has testified that one to two step occupations does [sic] not allow for competitive employment." (Pl. Br. 19-20). In Coleman, the ALJ asked the vocational expert if all work would be precluded for a hypothetical claimant if the ALJ found that there was a limitation to one to two-step occupations. 2010 WL 4942103, at *3. The expert responded, "Yes, sir. That would be considered sheltered work. That would not be, generally speaking, competitive work like three or four step." Id.

The problem with Plaintiff's argument is that it is simply not on point in this case-- even as related to Dr. Freeman's 2003 opinion. As Plaintiff acknowledges, Dr. Freeman found that Plaintiff was generally limited to one to two-step instructions. The object being discussed in Coleman was one to two-step occupations. These are not the same thing. An "occupation" is not an "instruction," or vice versa, and Plaintiff makes no attempt to explain the differences or to explain how testimony in another case relating to one to two-step occupations should be applied in this case to a general limitation to one to two-step instructions. Moreover, Plaintiff does not explain how vocational expert testimony in another case could constitute substantial evidence of a fact in this case even if the objects were identical. Lastly, in carefully selecting the wording of her argument Plaintiff implicitly acknowledged this difference. She first stated Dr. Freeman's opinion "that Weaver would be limited to one to two step instructions." (Pl. Br. 19). Citing

17

Coleman, she asserted, "A limitation to one to two step occupations can be considered sheltered work." Id.  Finally, she concluded that "at least one vocational expert has testified that one to two step occupations does [sic] not allow for competitive employment." Id. at 20.  Plaintiff has shown no error in the ALJ's evaluation of the medical opinions.

## V.     Credibility

Plaintiff points out that the ALJ found her allegations and the allegations of her grandmother generally credible.  She notes that her grandmother alleged she is slower than others in performing activities and is unable to follow written instructions.  She argues that since the ALJ found the allegations largely credible, he erred in failing to include in his RFC limitations that Plaintiff must work slower than others and must not have written instructions.  The Commissioner argues that the ALJ properly evaluated the credibility of Plaintiff's allegations and found them to be "largely," but "not entirely" credible.

As these arguments suggest, the ALJ summarized and considered the allegations of Plaintiff and of her grandmother regarding symptoms resulting from her mental impairments.  (R. 20-21).  Among other things he specifically noted Plaintiff's testimony that she was unable to get a driver's license, that she denied problems getting along with others, and denied worsening of her impairments when she discontinued her medication.  He noted that Plaintiff's reported daily activities and work history are consistent with simple unskilled work.  Among other things he also noted Plaintiff's grandmother's

reports that Plaintiff did household chores but at a slower pace than normal, and that she could follow instructions most of the time if they were clear and she could understand them. He stated, "The claimant's testimony is largely credible, but does not document disabling limitations." (R. 21). He found that Plaintiff's grandmother's "statement is generally credible, but does not document limitations preclusive of work." Id.

An ALJ's credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173. Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule"). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

Plaintiff's entire credibility argument is based upon her grandmother's reports that it takes her "a little longer than normal" to prepare meals, that she is "slower than would be normal" when doing house and yard work (R. 138), and that Plaintiff does not follow written instructions well, and "can't understand them most of the time." (R. 140).

However, Plaintiff does not demonstrate that these isolated reports are contrary to the ALJ's credibility finding because she does not show how it is that these reports document disabling limitations preclusive of work. While there is no doubt that some individual are so slow or so unable to comprehend instructions that they are unable to work, Plaintiff points to nothing in the record demonstrating that she has such disabling deficiencies. The ALJ made findings and linked them to substantial record evidence. The court's review of the Commissioner's credibility findings is deferential, and Plaintiff has not pointed to evidence sufficient to overcome that deference.

Plaintiff has shown no error in the decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 6th day of November 2012, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**